Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Rebecca R. Pallmeyer | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 04 C 3599 | **DATE** | 11/22/2004 |
| **CASE TITLE** | Frank Mancari, et al vs. Infinity Broadcasting East, Inc. d/b/a WBBM Newsradio 780 | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion And Order. WBBM's motion for judgment on the pleadings (Docket No. 12-1) is granted. Plaintiffs' defamation *per se* and false light claims are dismissed. Plaintiffs will have leave to file an amended complaint, if they can do so consistent with Rule 11, within 21 days.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | | **Document Number** |
|---|---|---|---|---|---|
| | No notices required. | | number of notices | | |
| ✓ | Notices mailed by judge's staff. | | NOV 2 3 2004 | | |
| | Notified counsel by telephone. | | date docketed | | 20 |
| | Docketing to mail notices. | | | | |
| | Mail AO 450 form. | | docketing deputy initials | | |
| | Copy to judge/magistrate judge. | | 11/22/2004 | | |
| | | | date mailed notice | | |
| ETV | courtroom deputy's initials | | ETV | | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | | |

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| FRANK MANCARI, an individual, MANCARI CHRYSLER JEEP, an Illinois corporation, MANCARI'S CHRYSLER JEEP OF CRESTWOOD, INC., MANCARI'S CHRYSLER JEEP OF ORLAND HILLS, INC., and MANCARI'S CHRYSLER JEEP OF DES PLAINES, INC., <br><br> Plaintiffs, <br><br> v. <br><br> INFINITY BROADCASTING EAST, INC. d/b/a WBBM NEWSRADIO 780, <br><br> Defendant. | No. 04 C 3599 <br><br> Judge Rebecca R. Pallmeyer |

## MEMORANDUM OPINION AND ORDER

Frank Mancari and his suburban car dealerships, Mancari Chrysler Jeep, Mancari's Chrysler Jeep of Crestwood, Inc., Mancari's Chrysler Jeep of Orland Hills, Inc., and Mancari's Chrysler Jeep of Des Plaines, Inc., have sued Infinity Broadcasting East, Inc. d/b/a WBBM Newsradio 780 ("WBBM") for defamation and false light invasion of privacy based on a news broadcast that aired twice on April 21, 2003. WBBM seeks judgment on the pleadings as to all claims. For the reasons set forth here, the motion is granted.

## BACKGROUND

Frank Mancari is a resident of DuPage County, Illinois and owns five auto dealerships in Cook County, Illinois. (Cmplt. ¶ 1.) WBBM, a Delaware corporation with its principal place of business in New York, operates Newsradio 780 and broadcasts throughout the Chicago Metropolitan area and in portions of Indiana and Wisconsin.[1] (Id. ¶¶ 3, 4; Notice of Removal ¶ 4.)

---

[1] Plaintiffs originally sued Infinity Broadcasting Operations, Inc., "an Illinois corporation." (Cmplt. ¶ 4.) In its Notice of Removal, WBBM clarified that Infinity Broadcasting Operations, Inc. is no longer in existence and that its successor corporation, Infinity Broadcasting East, Inc., is also incorporated in Delaware and has its principal place of business in New York.

Mancari has paid in excess of $250,000 to advertise his auto businesses with WBBM over the past six years or so. (*Id.* ¶¶ 9, 10.)

On April 21, 2003, WBBM aired the following news report at 6:07 a.m. and again at 7:22 a.m.:

> Suburban car dealer, Bruno Mancari, is back in court this morning as jury selection begins in his trial for murder. The 52-year-old Mancari is charged with six counts of murder in the beating death of Joseph Russo in March of 1985.
>
> Prosecutors allege Mancari had Russo killed over fears he would tell police about an illegal chop shop operation at the car dealerships.
>
> Mancari is being held without bond and he could face life imprisonment if convicted.

(*Id.* ¶ 6.) Bruno is Frank Mancari's brother. He was in fact tried for (and later acquitted of) the murder of Joseph Russo. Bruno has no ownership interest in Frank's car dealerships, however, and neither Frank nor his dealerships has ever been involved in any chop shop operation. (*Id.* ¶¶ 11-13.)

Frank Mancari and his dealerships filed suit against WBBM in the Circuit Court of Cook County, Illinois on April 20, 2004, alleging that WBBM committed defamation *per se* by falsely stating that Bruno Mancari was a "suburban car dealer" when it knew that Frank Mancari was the car dealer, and by suggesting that there was an illegal chop shop operation at the car dealerships. Mancari also alleges that WBBM's accusations of an illegal chop shop operation placed him in a false light. On May 24, 2004, WBBM timely removed the case to federal court on the basis of federal diversity jurisdiction. 28 U.S.C. §§ 1332, 1441. Three weeks later on July 16, 2004, WBBM filed this motion for judgment on the pleadings. WBBM claims that the broadcast in question is not "of and concerning" Frank Mancari as required for both a defamation *per se* and a false light claim, and is capable of an innocent construction as to all plaintiffs.

---

(Notice of Removal, at 1 n.1 and ¶ 4.) By motion dated June 10, 2004, Plaintiffs amended the Complaint to reflect the proper defendant.

2

## DISCUSSION

A motion for judgment on the pleadings pursuant to FED. R. CIV. P. 12(c) is evaluated using the same standard applicable to Rule 12(b)(6) motions to dismiss for failure to state a claim. *Guise v. BWM Mortgage, LLC*, 377 F.3d 795, 798 (7th Cir. 2004). Under that standard, judgment on the pleadings should be granted "only if it appears beyond doubt that the plaintiff cannot prove any facts that would support his claim for relief. In evaluating the motion, [the court] accept[s] all well-pleaded allegations in the complaint as true, drawing all reasonable inferences in favor of the plaintiff." *Thomas v. Guardsmark, Inc.*, 381 F.3d 701, 704 (7th Cir. 2004) (quoting *Midwest Gas Servs., Inc. v. Indiana Gas Co.*, 317 F.3d 703, 709 (7th Cir. 2003)).

### I. Defamation and False Light Invasion of Privacy

A statement is defamatory if it "impeaches a person's reputation and thereby lowers that person in the estimation of the community or deters third parties from associating with that person." *Schivarelli v. CBS, Inc.*, 333 Ill. App. 3d 755, 759, 776 N.E.2d 693, 696 (1st Dist. 2002) (citing *Kolegas v. Heftel Broadcasting Corp.*, 154 Ill.2d 1, 10, 607 N.E.2d 201, 206 (1992)). To be defamatory *per se*, a statement must be "so obviously and naturally harmful to the person to whom it refers that injury to his reputation may be presumed." *Id.*, 776 N.E.2d at 697 (citing *Kolegas*, 154 Ill.2d at 10, 607 N.E.2d at 206). Under Illinois law, five categories of statements are considered defamatory *per se*: (1) those imputing the commission of a criminal offense; (2) those imputing infection with a loathsome communicable disease; (3) those imputing an inability to perform or want of integrity in the discharge of duties of office or employment; (4) those that prejudice a party, or impute lack of ability, in his or her trade, profession or business; and (5) those imputing adultery or fornication. *Id.* (citing *Van Horne v. Muller*, 185 Ill.2d 299, 307, 705 N.E.2d 898, 903 (1998)). Plaintiffs claim that WBBM's broadcast implicates categories (1) and (4) because the use of the last name Mancari "clearly tied Frank Mancari to the criminal implications associated with the

3

phrase 'chop shop operation'" and "prejudiced . . . Frank Mancari and his dealerships in his profession and trade as a suburban car dealer." (Cmplt. ¶¶ 17, 18, 20.)

The tort of false light invasion of privacy protects a person's interest in being let alone from false publicity. *Brennan v. Kadner*, 351 Ill. App. 3d 963, 971, 814 N.E.2d 951, 959 (1st Dist. 2004). To state a false light claim, a plaintiff must establish that (1) he was placed in a false light before the public as a result of the defendant's action; (2) the false light in which he was placed would be highly offensive to a reasonable person; and (3) the defendant acted with actual malice. *Id.* As noted, Plaintiffs allege that WBBM placed Frank Mancari in a false light by "falsely accus[ing] him of a chop shop operation at his suburban dealership." (Cmplt. ¶ 26.)

WBBM argues that Frank Mancari's defamation *per se* and false light invasion of privacy claims fail because the broadcast can be innocently construed as referring to someone other than Frank. WBBM similarly seeks dismissal of the defamation *per se* claim as to the Mancari dealerships on the basis that the statements regarding an illegal chop shop operation are capable of an innocent construction. The court addresses each argument in turn.

## II. Frank Mancari's Claims

In determining whether a plaintiff has stated a cause of action for defamation *per se*, the court "must consider written or oral statements in context, giving the words and their implications their natural and obvious meaning." *Green v. Trinity Int'l Univ.*, 344 Ill. App. 3d 1079, 1093, 801 N.E.2d 1208, 1219 (2d Dist. 2003) (citing *Anderson v. Vanden Dorpel*, 172 Ill.2d 399, 412, 667 N.E.2d 1296, 1301-02 (1996)). "If, so construed, a statement 'may reasonably be innocently interpreted or reasonably be interpreted as referring to someone other than the plaintiff, it cannot be actionable *per se*.'" *Bryson v. News America Publications, Inc.*, 174 Ill. 2d 77, 90, 672 N.E.2d 1207, 1215 (1996) (quoting *Chapski v. Copley Press*, 92 Ill.2d 344, 352, 442 N.E.2d 195, 199 (1982)); *Schivarelli*, 333 Ill. App. 3d at 765, 776 N.E.2d at 701-02 ("[a]n essential element of a

4

defamation *per se* [and a false light]. . . claim is that the challenged statement be 'of and concerning the plaintiff'. . . i.e., that the alleged defamatory statement be identifiably about the plaintiff") (internal citation omitted). *See also Muzikowski v. Paramount Pictures Corp.*, 322 F.3d 918, 927 (7th Cir. 2003) (stating that "of and concerning" requirement for false light claims is "basically the same as the innocent construction rule"). Given the presumption of damages in *per se* actions, the innocent construction rule "favors defendants . . . in that a nondefamatory interpretation must be adopted *if* it is *reasonable.*" *Anderson*, 172 Ill.2d at 412-13, 667 N.E.2d at 1302; *Muzikowski*, 322 F.3d at 925 ("if a statement is capable of two reasonable constructions, one defamatory and one innocent, the innocent one will prevail"). Whether a statement is reasonably susceptible to an innocent interpretation is a question of law for the court. *Bryson*, 174 Ill.2d at 90, 672 N.E.2d at 1215.

WBBM asserts that no reasonable listener could have construed the broadcast as referring to Frank Mancari because it correctly stated that Bruno Mancari was on trial for murder and never directly or indirectly mentioned Frank. (Def. Mem., at 4-5)[2] (citing *Schivarelli*, 333 Ill. App. 3d at 765, 776 N.E.2d at 702.) In *Schivarelli*, plaintiff Peter Schivarelli was the majority owner of plaintiff H.D. Stands a/k/a Demon Dogs. The broadcast at issue was a 30-second promotional announcement for a television news investigative report into unsanitary conditions at certain unnamed restaurants. In one segment, investigative reporter Pamela Zekman interviewed Schivarelli at an outdoor location in front of a white wall with blue paneling and a picnic table. 333 Ill. App. 3d at 758, 776 N.E.2d at 696. Plaintiffs claimed, among other things, that the segment was defamatory *per se* and placed H.D. Stands in a false light. The court dismissed both claims, holding that the announcement was not "of and concerning" H.D. Stands or Demon Dogs. Neither H.D. Stands nor Demon Dogs was mentioned in the audio portion of the segment, and there was

---

[2]     WBBM's Memorandum of Law in Support of Defendant's Motion for Judgment on the Pleadings Pursuant to FED. R. CIV. P. 12(c) is cited as "Def. Mem., at __."

5

nothing to suggest that the outdoor location where Ms. Zekman interviewed Schivarelli (who was not identified by name) was related to H.D. Stands or Demon Dogs. *Id.* at 765, 776 N.E.2d at 702.

In this case, conversely, the broadcast expressly used the Mancari name and referred to a "[s]uburban car dealer." The broadcast did not use the first name "Frank," but a statement may be actionable defamation "even though the individual was not mentioned by name as long as it appears that some third party reasonably understood the statement to have referred to the individual." *Aroonsakul v. Shannon*, 279 Ill. App. 3d 345, 350, 664 N.E.2d 1094, 1098 (2d Dist. 1996). *See also Bryson*, 174 Ill. 2d at 96-97, 672 N.E.2d at 1218 ("where a libelous article *does not name the plaintiff*, it should appear on the face of the complaint that persons other than the plaintiff and the defendant must have reasonably understood that the article was about the plaintiff and that the allegedly libelous expression related to her") (emphasis in original); *but see Muzikowski*, 322 F.3d at 925 (*Bryson*'s heightened pleading standard requiring that libel be apparent "on the face of the complaint" not applicable in federal court). Whether a statement is capable of being understood as referring to the plaintiff is a question of law. *Aroonsakul*, 279 Ill. App. 3d at 350, 664 N.E.2d at 1098.

Mancari argues that reasonable listeners would have understood the broadcasts as referring to him because (1) he is the sole owner of the suburban car dealerships; and (2) customers routinely refer to dealerships by the owner's last name. (Pl. Resp., at 4.)[3] WBBM first responds that "defamation directed toward a corporation is not actionable by the corporation's owners or officers individually, nor *vice versa*." (Def. Mem., at 5) (citing *Life Printing & Publishing Co. v. Field*, 324 Ill. App. 254, 260, 58 N.E.2d 307, 310 (1st Dist. 1944) ("[w]ords spoken or written of a stockholder or officer give no right of action to the corporation unless spoken or written in direct relation to the trade or business of the corporation"); *Glenn K. Jackson Inc. v. Roe*, 273 F.3d 1192,

---

[3] Plaintiffs' Response to Defendant's Motion for Judgment on the Pleadings Pursuant to FED. R. CIV. P. 12(c) is cited as "Pl. Resp., at __."

6

1202 n.4 (9th Cir. 2001) (shareholder had no standing to sue for defamation directed towards corporation because "the wrong . . . suffered by the stockholder is merely incidental to the wrong suffered by the corporation and affects all stockholders alike").) Mancari is not, however, attempting to recover personally for defamation directed solely at his dealerships. He claims, instead, that listeners reasonably understood that the announcement was about him because he is the only suburban car dealer named Mancari.

WBBM next argues that Frank Mancari cannot assert a defamation claim based on the fact that he shares a name with the actual subject of the allegedly defamatory statement – Bruno Mancari. (Def. Mem., at 6) (citing *Myers v. The Telegraph*, 332 Ill. App. 3d 917, 773 N.E.2d 192 (5th Dist. 2002).) In *Myers*, for example, the defendant newspaper published two articles falsely reporting that Kirk Myers had pleaded guilty to felony drug possession. *Id.* at 920, 773 N.E.2d at 196. Joan Myers, Kirk's wife, alleged that she was defamed and placed in a false light because the articles used her last name and, thus, a third party could reasonably conclude that the stories referred to her. *Id.* at 927, 773 N.E.2d at 202. The court disagreed, noting that the news articles never mentioned the name Joan Myers, did not state that Kirk Myers was married, and never alluded to Joan as Kirk Myers's wife. *Id.* at 928, 773 N.E.2d at 202. The court held that the articles were not "of and concerning" Joan Myers merely because they mentioned the Myers name. In the court's view, "[s]uch a standard would mandate that every news story state the full name of the subject of the story every single time that person's name is mentioned or else risk a lawsuit from anyone else of the same last name. This is not the law in the State of Illinois . . ." *Id.* See also *Beresky v. Teschner*, 64 Ill. App. 3d 848, 850-52, 381 N.E.2d 979, 980-82 (2d Dist. 1978) (mere mention of plaintiff mother's name and plaintiff parents' address in articles, editorials, and letters to the editor regarding son's illicit drug use did not "conjure up visions of plaintiffs' residence being used as the headquarters of a 'family drug business'" where the alleged drug activity was clearly

7

discussed in reference only to the son and there was no suggestion that illegal activities were occurring in the home).

Unlike in *Myers*, the WBBM broadcast arguably alluded to Frank Mancari by incorrectly referring to Bruno Mancari as a "suburban car dealer," and stating that prosecutors suspected that "Mancari" had killed Joseph Russo "over fears he would tell police about an illegal chop shop operation at the car dealerships." A reasonable jury could conclude that the broadcast misstated Frank's name as Bruno and, thus, referred to Frank. *Cf. Myers*, 332 Ill. App. 3d at 928, 773 N.E.2d at 202 (article never alluded to Joan Myers where it never mentioned that Kirk Myers was married or referred to his wife); *John v. Tribune Co.*, 24 Ill.2d 437, 441, 181 N.E.2d 105, 107 (1962) (article was not "of and concerning" plaintiff Eve Spiro John where it expressly stated that Eve Spiro and Eve John were merely aliases for Dolores Reising).

The problem for Mancari is that reasonable listeners could also conclude that the broadcast referred to Bruno Mancari; indeed, the report expressly named 52-year-old Bruno as the individual on trial for murder. Mancari is correct that whether listeners actually understood the broadcasts to be about him is a question of fact for a jury. (Pl. Resp., at 5) (citing *Bryson*, 174 Ill.2d at 98-99, 672 N.E.2d at 1219). Such a determination is unnecessary, however, where, as here, the statements are reasonably capable of an innocent construction.[4] *Compare Bryson*, 174 Ill.2d at 98, 672 N.E.2d at 1218 (innocent construction rule did not apply to article that used plaintiff's last name (and no first name) where plaintiff "identified more than 25 alleged similarities between herself and the physical attributes, locations and events attributed to the character 'Bryson' in the

---

[4] Mancari's reliance on *Velle Transcendental Research Ass'n, Inc. v. Esquire, Inc.*, 41 Ill. App. 3d 799, 354 N.E.2d 622 (1st Dist. 1976), for the proposition that a jury can infer that a defamatory statement applies to the plaintiff if it points to him "by description or circumstance tending to identify him" is misplaced. That language arose out of the court's discussion of California, not Illinois law. *Id.* at 803, 354 N.E.2d at 625-26 (citing *Di Giorgio Fruit Corp. v. American Federation of Labor and Congress of Industrial Organizations*, 215 Cal.App.2d 560, 30 Cal.Rptr. 350 (1963)).

story"); *Muzikowski*, 322 F.3d at 922 (plaintiff was entitled to a chance to prove his defamation *per se* claim notwithstanding defendant's claim of innocent construction; allegedly defamatory movie had a character that "experience[d] almost exactly the same things as the real [plaintiff]").

Plaintiffs insist that the innocent construction rule "does not apply simply because the defamatory words are capable of an innocent construction which proposition the plaintiffs contest." (Pl. Resp., at 9.) As noted, however, Illinois law expressly requires that "a nondefamatory interpretation must be adopted *if* it is *reasonable*. *Anderson*, 172 Ill.2d at 412-13, 667 N.E.2d at 1302. See also *Muzikowski*, 322 F.3d at 925 ("if a statement is capable of two reasonable constructions, one defamatory and one innocent, the innocent one will prevail"). The news broadcast is reasonably construed as referring to Bruno Mancari and, thus, Frank Mancari's defamation *per se* and false light claims must be dismissed.

## III.   Mancari Dealership Claims

The Complaint also alleges that WBBM defamed Mancari's dealerships by twice airing a broadcast which, "read as a whole[,] necessarily link[ed] the phrase suburban car dealership with the criminal enterprise of a chop shop operation." (Cmplt. ¶ 18.) In Plaintiffs' view, the broadcast imputed that they had committed a crime and prejudiced them in their trade, profession or business. *Schivarelli*, 333 Ill. App. 3d at 759, 776 N.E.2d at 697. WBBM argues that even assuming the statements in the broadcast fall within these two categories of defamation *per se*, "generalized implications of criminal behavior – as opposed to express accusations of such behavior – are susceptible of an innocent construction and therefore not actionable as defamation *per se*." (Def. Mem., at 11.)

In support of this argument, WBBM cites *Bel-Grade, Inc. v. Etheridge*, 229 Ill. App. 3d 624, 593 N.E.2d 91 (3d Dist. 1992), in which the defendant allegedly defamed the plaintiffs by stating that the "Bel-Grade [tavern] was and had been suspected as a place where illegal activities were

conducted." *Id.* at 625, 593 N.E.2d at 92. In affirming dismissal of the claim, the appellate court noted that the defendant "only says the Bel-Grade was suspected of being a place where illegal activities were conducted. The statement does not accuse either plaintiff of being involved in criminal activity. Additional facts would be required to tie the plaintiffs to any criminal activity allegedly occurring on the premises." *Id.* at 626, 593 N.E.2d at 93. *See also Fedders Corp. v. Elite Classics*, 279 F. Supp. 2d 965, 970 (S.D. Ill. 2003) (email stating that defendant/counter-claimant's designs and molds for air conditioners that were being manufactured in China and sold in North America had been "pirated" and that such copying constituted "theft" was capable of innocent construction; "[t]he e-mail does not lay blame upon the counter-claimants, and an equally reasonable interpretation of the e-mail would be that a Chinese manufacturer was responsible for the alleged misappropriation").

In this case, the broadcast stated that "[p]rosecutors allege Mancari had Russo killed over fears he would tell police about an illegal chop shop operation at the car dealerships." (Cmplt. ¶ 6.) This is not an express accusation of illegal activity; to the contrary, it reflects prosecutors' speculation as to Mancari's alleged motive for killing Russo. The report specifically noted that there would be a jury trial and that Mancari had not yet been convicted of any wrongdoing. (*Id.*) ("[s]uburban car dealer, Bruno Mancari, is back in court this morning as jury selection begins in his trial for murder. . . Mancari is being held without bond and he could face life imprisonment if convicted"). *See Dubinsky v. United Airlines Master Executive Council*, 303 Ill. App. 3d 317, 326-27, 708 N.E.2d 441, 449 (1st Dist. 1999) (article was subject to an innocent construction where author did not directly accuse plaintiffs of illegal activity and noted that whether criminal activity had occurred was a question for the courts). The fact, if true, that the alleged wrongdoer sought to silence the victim does not suggest that the victim's claims were true. As in *Bel-Grade*, additional facts would be required to establish that there was in fact a chop shop operation at the dealerships, or that Frank Mancari was somehow involved in the illegal activity.

Plaintiffs nonetheless argue, without citing any authority, that the broadcast cannot be innocently construed because (1) "[t]he State's Attorney of Cook County, Illinois, did not allege in any indictment or at trial that any crimes were committed at the dealerships"; and (2) "WBBM[] [had] actual knowledge of no illegal operations at the dealerships." (Pl. Resp., at 8.) Whether the report mischaracterized prosecutors' theory of the case, however, is not relevant to a determination whether the statements are capable of an innocent construction. *See, e.g., Mittelman v. Witous,* 135 Ill.2d 220, 232-33, 552 N.E.2d 973, 979 (1989) ("*per se* actions . . . stand or fall upon the import of the statement, without the aid of extrinsic facts"). Nor is WBBM's alleged state of mind in broadcasting the report relevant. *See, e.g., Erickson v. Aetna Life & Casualty Co.,* 127 Ill. App. 3d 753, 764, 469 N.E.2d 679, 687 (2d Dist. 1984) ("if it is determined that the statement is libel per se, or if no innocent construction of the statement can be made, [then] the determination of knowledge of falsity, actual malice, or reckless disregard of truth or falsity, is a jury determination"). The statements regarding a chop shop operation at the car dealerships are capable of an innocent construction and, thus, cannot constitute defamation *per se.*

## CONCLUSION

For the reasons stated above, WBBM's motion for judgment on the pleadings (Docket No. 12-1) is granted. Plaintiffs' defamation *per se* and false light claims are dismissed. Plaintiffs will have leave to file an amended complaint, if they can do so consistent with Rule 11, within 21 days.

ENTER:

Dated: November 22, 2004

REBECCA R. PALLMEYER
United States District Judge